### The PEOPLE of the State of Colorado, Complainant,

v.

### Richard Morton ARNOLD, Attorney–Respondent.

#### No. 96SA211.

Supreme Court of Colorado,
En Banc.

Aug. 5, 1996.

Linda Donnelly, Disciplinary Counsel, John S. Gleason, Assistant Disciplinary Counsel, Denver, for Complainant.

Richard Morton Arnold, Denver, pro se.

Justice SCOTT delivered the Opinion of the Court.

The respondent and the assistant disciplinary counsel have entered into a stipulation, agreement, and conditional admission of misconduct. C.R.C.P. 241.18. The parties agreed in the conditional admission to the imposition of discipline in the range of a public censure to suspension from the practice of law for thirty days. An inquiry panel of the supreme court grievance committee approved the conditional admission, with the recommendation that the respondent be suspended for thirty days. We accept the conditional admission and the inquiry panel's recommendation.

### I

The respondent was admitted to the Colorado bar in 1983. The conditional admission

indicates that in October 1992, a client consulted the respondent with respect to representing the client in dissolution of marriage proceedings. The client lived in Colorado and his spouse lived in Texas. Although the respondent advised his client to seek a Texas divorce, the respondent agreed to file a dissolution of marriage proceeding in Colorado. He also agreed to represent the client on a pro bono basis, with the client paying the $88 filing fee. The respondent filed a dissolution of marriage proceeding in Arapahoe County on behalf of his client on November 19, 1992.

In early 1993, the respondent told his client that the client's spouse had not signed or returned the waiver of service he had mailed to her, so he would arrange to have her served personally in Texas. The client or the client's girlfriend regularly contacted the respondent in 1993 about the status of the dissolution proceedings, and in February 1994, the respondent advised his client and girlfriend that the client's dissolution was final and had been final since the previous month. The respondent's case file does not reflect that the respondent contacted Texas authorities with respect to serving the client's wife.

The client and his girlfriend decided to get married, and the respondent told them to tell the clerk when they obtained their marriage license that the client was not married. The client and his girlfriend were married on February 26, 1994.

When client contacted the Arapahoe County court to obtain copies of the order of dissolution, he was informed that the dissolution was not final. When the client communicated this information to the respondent, respondent told client it was a mistake and he would look into it, but neither the client nor his girlfriend have heard from the respondent since November 1994.

On July 14, 1995, client's girlfriend obtained a court order invalidating the marriage. She incurred attorney fees in the amount of $579.42 to obtain the declaration, and she expended $2,400 on her wedding. As a condition of the stipulation and conditional admission, the respondent reimbursed his client's girlfriend $3,000.

The respondent admits that the foregoing conduct violated R.P.C. 1.3 (a lawyer shall not neglect a legal matter entrusted to that lawyer); R.P.C. 1.4(a) (a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information); and R.P.C. 8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation).

## II

In approving the stipulation, the inquiry panel recommended that the respondent be suspended for thirty days. The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards*) provides that, in the absence of aggravating or mitigating factors, a public censure "is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client." *Id.* at 4.43. With respect to telling his client that his dissolution was final when it was not, however, "[s]uspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client." *Id.* at 4.62.

A short period of suspension is therefore appropriate, at a minimum.[1] In mitigation, the assistant disciplinary counsel indicates that the respondent has not been previously disciplined, *id.* at 9.32(a); there has been some interim rehabilitation, *id.* at 9.32(j); and the respondent has expressed remorse for his misconduct, *id.* at 9.32(*l* ).

We have decided to accept the inquiry panel's recommendation that a thirty-day

---

1. Had the respondent actually forged court documents to convince his client that the dissolution was final, disbarment would be appropriate. *People v. Belina,* 782 P.2d 26, 28 (Colo.1989) (disbarment was warranted when a lawyer prepared and delivered a fraudulent dissolution decree); *People v. Blanck,* 713 P.2d 832, 833–34

(Colo.1985) (lawyer disbarred after altering authentic dissolution decrees in order to misrepresent to clients that their marriages had been dissolved); *see also People v. Marmon,* 903 P.2d 651, 656 (Colo.1995) (lawyer disbarred for forging adoption decree to conceal his negligence).

suspension is adequate given the facts of this case and the mitigating circumstances.

### III

It is hereby ordered that Richard Morton Arnold be suspended for thirty days, effective thirty days after the issuance of this opinion. It is further ordered that the respondent pay the costs of this proceeding in the amount of $45.00 to the Supreme Court Grievance Committee, 600 17th Street, Suite 920–S, Denver, Colorado 80202, within thirty days after the announcement of this opinion.

LOHR, J., dissents.

Justice LOHR dissenting:

The respondent and the assistant disciplinary counsel entered into a stipulation, agreement, and conditional admission of misconduct in which they agreed to a disciplinary sanction in the range from public censure to thirty days suspension from the practice of law for the respondent's admitted violations of the Colorado Rules of Professional Conduct. An inquiry panel of the supreme court grievance committee considered and approved the stipulation and recommended a thirty day suspension, although three of the eight members participating disagreed on the basis that the respondent's misconduct warrants more severe discipline. Because I believe the recommended sanction to be too lenient in light of our prior disciplinary decisions and the serious nature of the misconduct in this case, I respectfully dissent and would reject the stipulation.

In the present case, the respondent agreed to represent a client on a *pro bono* basis in a dissolution of marriage proceeding. This act of charity was marred, however, by the respondent's egregious misconduct in handling the proceeding. Initially, the respondent failed to arrange for out-of-state service of the dissolution petition on the client's wife despite his assurances to the client that he would take this step. Following a year of inactivity with respect to the dissolution petition, the respondent falsely advised the client that the dissolution of marriage was final.

The respondent made this representation with full knowledge not only that it was not true but also that the client would likely suffer injury by relying on the respondent's misrepresentation and remarrying. Before the client went to obtain his marriage license, the respondent repeated his false assurance that the dissolution of his previous marriage was final and advised the client to tell the clerk that he was not married. Following the client's remarriage, the client in March 1994 requested copies of the final dissolution of marriage documents from the court and was informed by court personnel that the proceedings for dissolution of his prior marriage were not final. The client confronted the respondent with this information. However, instead of seizing the opportunity to admit and correct his misrepresentation, the respondent continued his pattern of deceiving the client by stating that "there was a mistake and he would look into it," a promise that apparently was never fulfilled. The client has not heard from the respondent since November 1994. The respondent's misconduct ultimately resulted in serious injury to the client and his new wife, including the annulment of their marriage and expenses incurred by the wife in excess of $3000 for the wedding and attorney fees for the annulment.[1]

Under circumstances substantially similar to those in the present case, we have imposed sanctions that greatly exceed a thirty-day suspension. In *People v. Belina,* 782 P.2d 26, 28 (Colo.1989), the attorney agreed to represent a client in her marriage dissolution proceeding but never served process upon the husband. Based on the attorney's lengthy period of inaction, the dissolution petition was dismissed by the court. Although the attorney knew that the client could suffer injury if she remarried prior to the completion of the dissolution proceedings, the attorney misrepresented to the client that he had obtained the dissolution decree and that she could remarry. The client relied on this representation and was remarried. After the remarriage, the attorney on two occasions sent the client a forged copy of

---

1. As a condition of the stipulation, the respondent reimbursed the wife $3,000.00 after the client filed a complaint with the grievance committee.

the purported dissolution decree and denied this falsification when confronted by the client. Ultimately, the client was forced to seek other counsel and incur additional expense to finalize the dissolution.

After reviewing the facts in *Belina*, we stated that "[the attorney's] conduct, standing alone, calls for disbarment," and assessed this severe sanction against the attorney.[2] 782 P.2d at 28. The respondent's conduct in the present case is strikingly similar to that of the attorney in *Belina*. Although the respondent in this case did not actually falsify a dissolution decree, he neglected his duties with respect to prosecution of the dissolution action and consistently lied to his client regarding the completion of the dissolution of marriage proceedings. Moreover, the respondent made these false statements with the knowledge that his client intended to rely on them by remarrying. Such reliance did in fact occur, and the respondent's deception ultimately contributed to the annulment of the client's new marriage. In my opinion, this intentional and repeated deception of a client is completely inexcusable, even in the absence of conduct involving the falsification of documents.

Admittedly, the harsh sanction of disbarment in *Belina* was further supported by the presence of aggravating factors, including the attorney's prior history of misconduct, and the absence of mitigating factors. In the present case, the majority seemingly places great weight on the respondent's lack of prior infractions, interim rehabilitation, and apparent remorse for his actions. *See* maj. op. at 729–30. I do not discount these considerations. However, given the seriousness of his misconduct and the similarity of his infractions to those of attorneys who received substantially greater punishments in prior cases, I do not believe that a thirty-day suspension is a sufficient sanction. Accordingly, I would reject the stipulation as too lenient and return the matter to the grievance committee for further proceedings.

---

**2.** The severity of the sanction in *Belina* is consistent with prior cases addressing similar conduct. *See, e.g., People v. Gregory,* 788 P.2d 823 (Colo. 1990) (respondent received suspension of one year and one day for failure to prosecute foreclosure action, notwithstanding absence of prior disciplinary record, absence of selfish motive, and full and free disclosure to the Disciplinary Board); *People v. Blanck,* 713 P.2d 832 (Colo. 1985) (attorney disbarred for preparing and delivering fraudulent dissolution of marriage decrees).